## The Union Bank of Louisiana *v.* Guillotte.

Where the report made by a sworn surveyor, appointed by the court having cognizance of an action of boundary, is defective, and the plan annexed to it is not in conformity with the titles, the report should be rejected and a new survey ordered. C. C. 837. The surveyor is but an expert, and his operations are always under the control of the court. The defectiveness of the report is no ground for non-suiting the plaintiff.

APPEAL from the District Court of Jefferson, *Clarke*, J. *Denis*, for the appellants. *Soulé*, for the defendant. The judgment of the court was pronounced by

ROST, J. This is an action of boundary, and for the removal of certain fences erected around property alleged to belong to the plaintiffs. The prayer of the petition is that surveyors be appointed to inspect the adjacent estates, and report according to the titles of the parties; that the boundary lines between said estates be fixed, so as to divide proportionally the over extent of land found in the original tract of which these estates are parcels. There is also a prayer that the fences complained of be removed. The defendant has joined the plaintiffs in the prayer that surveyors be appointed to examine the premises in dispute, and report; but he

denies the allegations in the petition having a tendency to establish the dividing line of the property held by them at the point therein specified. He further avers that the fences complained of do not cover the lines of the lots sold to him by the Ursuline Nuns, in 1811.

An order of survey was granted by the court, and a commission issued to *Louis Bringier*, a sworn surveyor of the State, who made a survey and report, in all respects favorable to the pretentions of the defendant. The district judge being of the opinion that the survey was not made in conformity with the titles of the parties, and that the surveyor should have ascertained the location of tho fixed boundary called for by the defendant's title, rejected both the survey and the report; and being farther of opinion that, in actions of boundary, art. 829 of the Civil Code imperatively requires the limits to be fixed by a sworn surveyor, and that, without the report of the surveyor duly homologated, no judgment can be rendered, he non-suited the plaintiffs. Both parties have appealed, and ask that the case be considered on its merits.

We are of opinion that the district judge erred, in dismissing the petition. The article of the Code declaring that limits in actions of boundary must be fixed by a sworn surveyor of the State, is to be taken in connection with art. 837, which makes it the duty of the judge in those cases to appoint surveyors to inspect the premises, and to decide on their report, according to the titles of the parties and the plans which shall be presented to the court. If the reports thus made are defective, and the plans annexed to them not in conformity with the titles, the court ought to reject them, and order a new survey to be made according to law. The surveyor is but an expert; and his operations are always under the control of the court.

Before going into an examination of the merits of this case, it is necessary to state the facts upon which it rests. In 1810, the *Ursuline Nuns* divided their plantation adjoining *faubourg* Annunciation, into eleven lots, numbered from one to eleven, and caused a plan of this division to be made and deposited in the office of *N. Broutin*, a notary public of this city. On this plan two streets called St. Andrew's road and Felicité road were laid out at the side lines of the plantation; a third street called St. Mary's road was opened through the middle of it, and extended in the rear until it reached lot no. 1, which remained undivided, and included all the rear of the plantation. All these streets converged from the front to the rear of the plantation. Shortly after this division the *Nuns* sold to *Teinturier* the lot no. 1, measuring 522 feet 6 inches front on the side of the river, 900 feet on the side of the widow *Panis*, and 1078 feet on the side of and adjacent to the suburb Annunciation, being, says the sale, part of the plantation which the *Nuns* have divided into lots, in conformity to the plan deposited in the office of *N. Broutin*. After this sale, to wit, on the 21st. of October, 1811, the defendant purchased from the *Nuns* two parcels of ground, one situated within the lines of lot no. 2, in the plan of the faubourg, measuring 239 feet 6 inches front to the road which divided it from the property acquired by *Teinturier*, and 300 feet in depth and front on St. Andrew's and St. Mary's roads; the other situated within the lines of lot no. 3, and measuring 250 feet front on said road along *Teinturier's* property, and 300 feet in depth and front on St. Mary's and Felicité roads. On the 9th of December, 1811, the defendant purchased from the *Nuns* two other parcels of ground situated in the same lots, nos. 2 and 3, contiguous to the land already acquired by him, and extending from the rear lines of said land 300 feet front on St. Andrew's, St. Mary's and Felicité roads. The

UNION BANK
v.
GUILLOTTE.

defendant had thus a title to two tracts of land, extending 600 feet in depth from the line of Teinturier road, these dimensions being in french measure.

In the subsequent year, *Urbain Gaiennié* purchased from the *Nuns* a parcel of ground situated in lot no. 3, adjoining the property acquired by the defendant in said lot, and measuring 266 feet along the line of the defendant's property from Felicité to St. Mary's road, 281 feet on the opposite and parallel side, and 370 feet in depth. Afterwards *Gaiennié* purchased from the *Nuns* 68 feet front on St. Mary's and Felicité roads adjoining his previous purchase; and *René Théard* became the purchaser of the balance of lot no. 3, without warranty as to the deficiency in the measures marked on the plan of division. The property acquired by *Gaiennié* was subsequently purchased by *Martinstein*, who failed, and surrendered it to his creditors. It was divided into building lots and sold by his syndics, when a lot adjoining in the rear, the property of the defendant, was adjudged to *George Green*, under whom the plaintiffs claim. The proper location of the boundary line between this lot and the property of the defendant, is the subject of the present suit.

The plaintiffs contend that Teinturier street as it now exists is the former Teinturier road, mentioned in the sale to *Guillotte*, and that, taking that street as his boundary, his fence encloses a larger portion of land than his title calls for. They further allege that, admitting, which they fully do, that Teinturier street at its present location measures only from Felicité to St. Mary's road, on the side of the defendant's property, 244 feet instead of 250 called for by *Lafon's* plan and the defendant's title, and even supposing, which they deny, that the said Teinturier road is out of its original location, yet by the defendant's own judicial admission, and by his solemn ratification made with full knowledge of the deficiency, Teinturier street as it now stands, is the fixed lower boundary of his land.

The defendant insists, on the other hand, that Teinturier road is an imaginary boundary, which did not exist at the time of the sale, and that the location of his land cannot be ascertained with reference to it; that he purchased under a plan in which were two main roads called Felicité and St. Mary's, the lines of which were then, have ever since been, and are still, well ascertained and known; that there is also on the plan another road, crossing the two roads just named, called Chemin des Religieuses, the lines of which were also and are still well ascertained and known; and that following down the two lines of St. Mary's and Felicité roads from the chemin des Religieuses, the point at which the distance between those two lines gives the front mentioned in the sale from the *Nuns* to him, to wit, 250 feet french measure, must be taken as the front of his lot; the consequence of this location being to advance his land more than 134 feet further up towards the river, thus overrunning the whole of the plaintiffs' lot, and the greater part of the ground surrendered by *Martinstein* to his creditors.

In the sale from the *Nuns* to the defendant, he acknowledged himself to be fully acquainted with the land sold and its limits, and stipulated to take it in the state in which it then was. This sale was made thirty eight years ago, and the defendant, who lived on the land, has never before claimed the location now contended for. His allegation, in the answer to this suit, that the fences complained of do but cover the lines of the lots sold to him, when coupled with the admission in the record that the distance from those fences to Teinturier street is over 600 feet, cannot well be understood otherwise than as a declaration that those fences do cover the lines of the property sold to him.

In August, 1831, the defendant sold to *McNeil* the front of this lot on Tein-  
turier street, it being 244 feet french measure. This land is described in the
act as part of that which the defendant purchased from the *Ursuline Nuns*, by
act passed before *Narcisse Broutin*, notary public, bearing date the 21st of
October, 1811. In the same year he made three other sales of lots fronting on
Teinturier street, between St. Andrew's and St. Mary's roads, and described
those lots to be portions of the ground acquired from the *Nuns* by the same act.
The dimensions in those sales were given by reference to a plan of the faubourg,
as it is now laid out, made by *Joseph Pilié*, in 1829, and on which the land sold
to the defendant by the *Nuns* is represented as fronting on Teinturier street.

After the long acquiescence of the defendant in the adverse possession of those
claiming under *Urbain Gaiennié*, and the acts on his part seeming to recognize
their title, if he was in error as to the proper location of his land, it was incum-
bent upon him to place that error beyond all reasonable doubt. We are of
opinion that he has not done. so.

The sale of the *Nuns* to *Teinturier*, in 1810, refers to the plan of division
of their plantation. It is urged that the defendant purchased under a plan made
by *Lafon*, posterior in date to the sale to *Teinturier*, and that the plans under
which he and *Teinturier* bought were different. Both sales refer to the plan
of division of the faubourg, and there is no evidence to show that that plan
was ever changed by the *Nuns*; it represents the plantation as bounded in the
rear by the bayou *Des Cannes*, and it is proved that the length of the side lines
of *Teinturier's* land from Teinturier street to the centre of the bayou *Des Cannes*,
is precisely the distance mentioned in his title. The bayou *Des Cannes* not being
navigable, the back line of course runs through the middle of it. This fact goes
far to prove that Teinturier street, as it now exists, must have been the road
separating lot no. 1 from the property of the defendant.

The defendant acquired from the *Nuns* 239 feet 6 inches front on Teinturier
road, between St. Andrew's and St. Mary's roads, and is shown to have sold 244
feet 6 inches front on the said Teinturier road ; so that while there appears to be
a deficiency of 6 feet in the front, between St. Mary's and Felicité roads, an
excess of 5 feet is found between St. Mary's and St. Andrew's roads. The
witness *Grant*, who is a surveyor and has measured the ground, testifies that
the quantity of land presently found between St. Andrew's and Felicité roads
on the line of Teinturier street, is only 9 inches less than what is called for in the
original plan of the faubourg. He and *D'Hemécourt* farther state that, the dif-
ference between the measures in the original plan and those found by actual
survey is, as they believe, owing to the fact that the lines of St. Mary's road
have been altered from their original direction, and made to converge towards
Felicité road, so as to leave a greater space than was originally given on the side
of St. Andrew's road. They also testify that the line of St. Andrew's road has
not been changed. The defendant maintains that the reverse is the truth ; that
the direction of St. Andrew's road alone has been changed, and that road made
to converge with St. Mary's road less than it originally did.

The weight of evidence upon this part of the case is decidedly with the plain-
tiffs. One of their witnesses testifies that in running the lines he found on the
line of St. Andrew's road ancient stakes and marks, which in all probability had
been placed there before the plan of *Pilié* was made. The evidence of the
defendant does not go to establish the location as it really was, but as it should
have been. It does not rest upon actual knowledge of the fact at issue, but upon
calculations of distances deduced from the direction of the side lines, as they are

49

UNION BANK
*v.*
GUILIOTTE.

given in the original plan of division. In the two plans which have been produced the direction of those lines is not the same, and the results of the calculations made from them show the mistakes of the surveyors much more satisfactorily than the alleged error in the location of the defendant's land. But, besides this, the defendant has availed himself of the alleged change of direction of St. Andrew's road, by selling 5 feet front more than he says he was entitled to on Teinturier street. These sales must be viewed as a ratification on his part of the plan in reference to which they were made.

If Teinturier street is not the true boundary, and the mode proposed by the defendant to ascertain it be adopted, the front of his property between St. Mary and Felicité roads will be advanced 134 feet from Teinturier street towards the river. But the same rule must also be applied to the lots between St. Andrew's and St. Mary's streets, and their front carried beyond Teinturier street upon lot no. 1, at the place where the distance between those two roads is only 239 feet, 6 inches. This location cannot be reconciled with the description in the act of sale, and the plan to which it refers, giving the said front to lots nos. 2 and 3.

For the reasons assigned it is ordered, that the judgment in this case be reversed, and the case remanded for further proceedings according to law, and in conformity with the foregoing opinion; the costs of this appeal to be equally divided between the parties.